FILED

SEALED

DEC 17 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
                                          DEPUTY CLERK

# United States District Court

_____ **EASTERN** _____ District of _____ **CALIFORNIA** _____

| In the Matter of the Search of | **APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT** |
|---|---|

(Name, address or brief description of person, property or premises to be searched)

MICHELLE RYAN CLARK

CASE NUMBER: 2:13 - SW 0 0 8 1 4   EFB

I, <u>U.S. Postal Inspection Service Special Agent La'Keisha Alexander-Abram</u>, being duly sworn depose and say:

I am a(n) <u>U.S. Postal Inspection Service Special Agent</u> and have reason to believe that ☒ on the person of or ☐ on the property or premises known as (name, description and/or location)

**MICHELLE RYAN CLARK. SEE ATTACHMENT A-3, attached hereto and incorporated by reference.**

in the _____ **EASTERN** _____ District of _____ **CALIFORNIA** _____
there is now concealed a certain person or property, namely  (describe the person or property to be seized)

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

which is (state one or more bases for search and seizure set forth under Rule 41(b) of THE Federal Rules of Criminal Procedure)

property that constitutes evidence, fruits, and/or instrumentality of a criminal offense

concerning a violation of Title 18 United States Code, Section(s) 1708 and 2115.

The facts to support a finding of probable cause are as follows:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

Continued on the attached sheet and made a part hereof.     ☒ Yes  ☐ No

_____
Signature of Affiant
Special Agent La'Keisha Alexander-Abram
U.S. Postal Inspection Service

Sworn to before me and subscribed in my presence,

November 2, 2013                    at   Sacramento, California
Date                                          City      State

_____
Edmund F. Brennan,   U.S. Magistrate Judge                    Signature of Judge

### AFFIDAVIT OF LA'KEISHA ALEXANDER-ABRAM

### IN SUPPORT OF SEARCH WARRANT

I, La'Keisha Alexander-Abram, being duly sworn, depose and state the following.

### I.     INTRODUCTION AND AGENT BACKGROUND

1.      I am a Postal Inspector and have been so employed since February 2013.  Currently, I am assigned to the San Francisco Division of the United States Postal Inspection Service (USPIS), and I work out of the Sacramento office.  During my tenure, I have completed training at the United States Postal Inspection Service Academy in Potomac, MD.

2.      As a part of my official duties, it is my responsibility to investigate violations of federal and state law, including robbery and burglary of postal facilities, destruction of government property, theft of U.S. Mail, possession of stolen U.S. Mail, mail and bank fraud, credit card fraud, identity theft and/or counterfeit personal checks and identifications.

3.      As an Inspector with the USPIS, I have participated in criminal investigations relating to theft of U.S. Mail, counterfeit personal and corporate checks, possession of stolen U.S. Mail, credit application fraud, bank fraud, theft of U.S. Postal keys, identity theft and counterfeit identifications.

### II.     INTRODUCTION AND AGENT BACKGROUND

4.      This affidavit is submitted in support of a Search Warrant for each of the following (collectively, the "Target Locations"):

      a.      6677 Tyler Drive, Grizzly Flats, CA 95636, the residence of MICHELLE RYAN CLARK and other property, including two sheds, at the residence, as more particularly described in Attachment A-1;

      b.      A white Jeep Cherokee, California license plate number 6NXE637, registered through December 2012 to Sarah June Pierson, which CLARK admits driving and is more particularly described in Attachment A-2; and

      c.      The person of MICHELLE RYAN CLARK, described in Attachment A-3; and

1

      d.     Two cellular phones previously seized from 6677 Tyler Drive, Grizzly Flats, CA, during a probation search of the premises, more particularly described in Attachment A-4.

5.     The items set forth in Attachment B constitute evidence, fruit and instrumentalities of violations of 18 USC § § 1708 (mail theft) and 2115 (burglary of a post office).

6.     The statements in this affidavit are based (a) on my personal knowledge, (b) on my participation in this investigation, (c) on my training and experience and on the training and experience of other law enforcement personnel with whom I have discussed this case, (d) on information gained from other law enforcement personnel, state and federal reports, and data bases, and (e) on statements of witnesses, victims, and postal personnel. Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included every fact known concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for a search warrant authorizing a search of the Target Locations.

## II.     **STATUTORY AUTHORITY**

7.     Pursuant to Title 18, United States Code, Section 2115, Burglary of a Post Office, it is a crime when a person "forcibly breaks into or attempts to break into any post office, or any building used in whole or in part as a post office, with intent to commit in such post office, or building or part thereof, so used, any larceny or other depredation."

8.     Pursuant to Title 18, United States Code, Section 1708, Theft or Receipt of Stolen Mail, it is a crime when a person "steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein."

2

Affidavit in Support of Search Warrant

### III.    LOCATION TO BE SEARCHED

9.    This affidavit seeks to establish probable cause to search the Target Locations, as more particularly described in Attachments A-1 through A-4 to this affidavit, for property, as more particularly described in Attachment B, that constitutes evidence of a crime, or property designed for use, intended for use, or used in committing a crime in violation of Title 18, United States Code, Section 2115, Burglary of a Post Office, and Section 1708, Possession of Stolen Mail are located at the premises identified above and in Attachments A-1 through A-4. .

### IV.    SUMMARY OF INVESTIGATION

10.    Between November 6, 2013 and November 7, 2013, the Grizzly Flats Post Office was burglarized, and at least seven U.S. Mail parcels were stolen. Upon arriving to work on the morning of November 7, at approximately 8:20 a.m., a postal service employee noticed that one back door was halfway open and another back door had the lock flipped up but was not completely closed. She also noticed that the entry door to the post office appeared to have been pried open with a pry bar or other implement. Scratches could be observed around the door. In addition, seven parcels were missing and a dial cover from a safe was on the floor. Post office records showed that parcels belonging to the following individuals were missing: William B., Steve S., Georgia O., John K., Melanie O., Janise T., and James W.

11.    Among the items known to be stolen from the post office during this burglary were: (a) a parcel including specialty balloons, specifically packages of 100 pink pearl Qualatex latex balloons, 100 purple Qualatex latex balloons, 100 pearl white balloons and 100 lavender balloons (reported missing by postal customer and victim Melanie O., who stated that she purchased the balloons over the phone and was expecting a shipment of specialty balloons from SF Party); (b) a parcel containing a book from the Military Book Club (reported by postal customer and victim James W., who was expecting the book); and (c) a parcel containing diabetes test strips (reported missing by victim John K.).

3

Affidavit in Support of Search Warrant

12.     On November 7, 2013, El Dorado County Sheriff Deputy Todd Crawford canvassed the neighborhood near the Grizzly Flats Post Office. Local residents stated that they observed a white Jeep Grand Cherokee driving around the Grizzly Flats Post Office on numerous occasions. They also stated that they had seen a couple of individuals lingering around the post office that they did not know, but recognized as individuals they believed to be associated with an address on Tyler Road. The post office is not in the vicinity of other businesses, so the individuals milling about the area seemed out of place. The individuals canvassed the possible *identified as* residence of individuals and location of the Jeep as 6677 Tyler Drive, Grizzly Flats, CA. Tyler Drive is a street that winds behind Sciaroni Road, on which the United States Post Office is located (at 4991 Sciaroni Road).

13.     Deputy Crawford made contact with MICHELLE RYAN CLARK at 6677 Tyler Drive, Grizzly Flats, CA, 95636. At or around that time, Deputy Crawford determined that CLARK was on formal, searchable probation. Based on this information, Postal Inspectors assisted Deputy Crawford with a probation search soon thereafter.

14.     The 6677 Tyler Drive property belongs to Robert Craggs, who according to CLARK, comes up on the weekends. CLARK stated that she has been living there, all week, for three (3) weeks. She stated that prior to that, she was living in Antelope, CA. Other residents of the house include CLARK's boyfriend, Duc Lee, as well as Craggs, and his son "Matt," none of whom where home at the time of the search. CLARK also mentioned another individual named "Rachel," but it is unclear whether "Rachel" is another occupant of the house.

15.     Deputy Crawford and Postal Inspectors, including the affiant, searched a portion of the house, namely, (a) the living room common area, where CLARK stated that she sleeps; (b) a back bedroom, where CLARK stated that she keeps her personal items; (c) parts of the kitchen, which CLARK accesses; (d) one bathroom, where CLARK stated she had just showered; and (e) one of two sheds in the back of the house, the search of which CLARK granted verbal consent.

4

Affidavit in Support of Search Warrant

16.     During this search, a box was located in the back bedroom.  Personal items, such as mail in CLARK'S name, her purse and notebook were located around the box.  The box contained, among other things: (a) the style and brand of specialty balloons reported stolen by postal customer Melanie O., including packs of purple, pink and white balloons; (b) a book titled *Catastrophe 1914: Europe Goes to War*, with a packing slip showing the name and P.O. Box information of mail theft victim James W.; and (c) four small boxes of OneTouch Ultra Blue test strips matching the description of missing diabetes strips belonging to victim John K.

17.     During the search, the affiant also found several pieces of U.S. Mail in a black notebook, which was comimngled with CLARK's personal possessions.  The U.S. Mail was addressed to and from people other than CLARK or other identified occupants of 6677 Tyler Drive, Grizzly Flats, CA.  The items were addressed to individuals at addresses in and around the Grizzly Flats, CA and Placerville, CA areas.  The U.S. mail contained, among other things: (a) a Sam's Club credit card statement addressed to Cindy M.; (b) two personal checks, written by Sarah E. to individuals or entities other than CLARK, including one addressed to AT&T Mobility; and (c) a J. Crew credit card statement addressed to Marilyn P.  On the basis of my training and experience, I believe this mail is also stolen U.S. Mail.

18.     Also located in the notebook were the following items:  (a) a student I.D. card for an individual named Bobbi Jo E.; (b) handwritten notes regarding Bobbi Joe E., including what appears to be financial account information and the notes "approved" and "$300"; (c) a social security card in the name Susann H.; and (d) handwritten notes, listing personal identification information for multiple other individuals, including addresses, telephone numbers and social security numbers, including personal information for an individual named Sarah C.

19.     Also found in the notebook was a check, ostensibly drawn on the account of Iberica USA, Inc., made payable to CLARK, in the amount of $2,800.00.  The check purported to be drawn on an account from TD Bank, but the affiant telephoned the TD Bank, and the bank cannot verify the

5

account number.  Moreover, the telephone numbers listed for Iberica USA, Inc. are not in service.

20.     In addition, blank check stock paper was located in a magazine which CLARK stated belonged to her, and which located near her belongings.  The affiant asked CLARK about the blank check paper, and she stated, in substance, that she wanted to see what she could do with blank check paper, because she had never seen check paper before.

21.     Based on my training and experience, as well as the unverifiable account information and the nearby blank check paper, the check to CLARK appears to be counterfeit.

22.     In the shed behind the house, the following items were found: (1) an AT&T bill payment stub belonging to Sarah E. and the associated envelope, with an address label listing her husband, Brian E., and their address on Tolowa Trail, in Placerville, CA; and (2) at least three pieces of U.S. mail, addressed to two additional households on Tolowa Trail.  The AT&T stub listing Sarah E. was for the same amount as the check addressed to AT&T, written by Sarah E., found in the notebook inside the house.  The same account number is referenced on the memo portion of that check.  Further discussions with victim Sarah E. revealed that Sarah E. had placed personal checks in the mail, in order to pay bills, by placing them in an outgoing U.S. Mail box approximately 1.5 miles from her home on Tolowa Trail. She stated that she does not know CLARK, nor did she give the checks to CLARK or give CLARK permission to possess them.

23.     During the probation search, two cellular phones were located, which Deputy Crawford determined may include relevant information.  Postal Inspectors, including the affiant, seized the phones at that time.  Upon the seizure of the phones, CLARK stated to me that she would have to get another phone.  Based on this conversation, I have reason to believe that CLARK may have obtained an additional cellular phone, which may be found at the residence.

24.     During the search, I also observed a laptop computer in the room where CLARK's other belongings were observed.

6

25.     Postal Inspector Martin and I conducted a non-custodial voluntary interview with CLARK and asked her about the items recovered in her possession.  CLARK stated she was holding onto the balloons for a friend, but could not give details as to where they were bought or the approximate amount paid for them.  CLARK stated the box containing the stolen U.S. Mail of James W. was not hers, as she was holding onto the box for a friend, but confirmed this was an area of the house she has full access to.  CLARK could not explain how the stolen items ended up in her residence.  I also asked CLARK about the stolen U.S. Mail from Placerville, which was found in the black notebook and co-mingled with her personal possessions.  CLARK stated that her grandmother gave her one of the items, a pack of holiday labels containing another person's name and address; however, she does not know that individual and stated the individual does not live at 6677 Tyler Drive.  CLARK claimed to have no knowledge of how the other U.S. Mail ended up in her possession.  She denied breaking into the post office.

## IV.    **STATEMENT OF PROBABLE CAUSE**

25.     Based upon my training and experience, I believe that the U.S. Mail not addressed to CLARK, located at the house and shed, to be stolen, and the items, including the book, balloons and diabetes test strips, to be from the parcels stolen from the Grizzly Flats Post Office.  Based on my conversations with CLARK, who could not explain her possession of such materials, I believe that CLARK stole or was involved with the theft of the U.S. Mail in her possession and the burglary of the Grizzly Flats Post Office.

26.     During my conversations with CLARK, she stated that other occupants of the house were out, and that the owner of the property uses it on the weekends.  Moreover, the affiant observed during the search that the door to at least one other bedroom was open.  Based on this information, as well as the location of items that appear to be U.S. Mail not only in a bedroom but also in a shed at the rear of the property, I believe that CLARK has access to the other areas of the house besides her bedroom and

7

common areas, including areas not searched during the probation search.

27.     Based on Deputy Crawford's discussions with local residents, who stated that they observed more than one individual milling about the post office, I believe that CLARK, who stated she only recently moved to the area, may have been accompanied during the burglary of the post office by one or more other individuals residing at 6677 Tyler Drive, Grizzly Flats, CA.

28.     I am aware that individuals involved in mail theft possess and hoard stolen U.S. Mail in various locations for use at later dates.  For example, individuals steal and possess stolen U.S. Mail in order to use those items (including personal financial and identification information) stolen from the U.S. Mail in order to enact other theft schemes.  I am aware that in bank fraud and identity theft schemes, perpetrators often use victim names, pose as victims on-line to make internet transactions and to open accounts, and cause fraudulently purchased items to be mailed in victim names.  Perpetrators will do this to avoid detection and to create layers of anonymity.  I am further aware that perpetrators will keep tools, implements, financial statements, access devices, and stolen items close to themselves (especially in vehicles they use, on their person, in their residences, and in sheds and storage units) or in areas in which they have access to ensure custody and control of the items and for easy access for use or disposal.

29.     Based on my training and experience I believe the comingling of the U.S. Mail addressed to other individuals, together with notes and other personal identification and financial information related to individuals other than CLARK and the other occupants of the house, are consistent with items used to enact such schemes, and that CLARK may have been committing or planning to commit bank fraud or identity fraud with the items and information stolen from the U.S. Mail.

30.     Based upon my training and experience, I am also aware that individuals involved in identity and bank theft use financial account information gleaned from items stolen from the U.S. Mail in order to create counterfeit checks.  Based on the presence of blank check paper and a check that

8

appears to be counterfeit at the residence, I believe that CLARK may have been stealing U.S. mail in order to use the information to create counterfeit checks.

31.    Based on my training and experience, I am aware that individuals who steal mail may keep documents, images, records, materials, files, letters, memoranda and matter relating to U.S. Mail, U.S. Mail receptacles, and U.S. Post Offices and their location and hours in order to steal mail from or burglarize those locations.

32.    Based upon my training and experience, my conversations with other law enforcement personnel assisting in this case, and my investigation in this case, I am aware that persons involved in identity theft, possession of stolen U.S. mail, credit card fraud, and bank fraud, along with their co-conspirators and/or accomplices, use mobile cell phones and computer laptops to communicate with one another, either by voice calls or text messages regarding their fraud and theft activities. I know that such persons who use such devices commonly exchange real time information about theft and fraud activity and other information regarding execution of theft or fraudulent transactions. Such information can be found stored in the text and/or email messages of such devices. Such persons also use the devices to link with the internet to obtain addresses and maps and locations/addresses of victims. Such devices can also be used to remotely make (on-line) fraudulent purchases. Such devices can also be used to perform false or fraudulent mobile banking operations and checks (verifications).

33.    Based upon my training and experience, my conversations with other law enforcement personnel assisting in this case and my investigation in this case, I am aware that the complete contents of text messages and emails may be important to establishing the actual user who has dominion and control of a particular phone or computer at a given time. Cell phones may be subscribed to under false names with little to no verification by the service provider. Cell phones and computers may also be used by multiple people. Given the ease with which such items may be obtained and used, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of a particular cell phone or

9

Affidavit in Support of Search Warrant

device that was used to send a particular text or email message, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular cell phone or device. Often, by piecing together information contained in the contents of the device (cell phone or computer or storage device) an investigator can establish the identity of the actual user. Often, those pieces will come from a time period before the device was used in criminal activity. Limiting the scope of the search for information showing the actual user of the device would, in some instances, prevent the government from identifying the user of the device and, in other instances, prevent a defendant from suggesting that someone else was responsible. Therefore, the entire content of a communication device often provides important evidence regarding the actual user's dominion and control of the device. Moreover, to comply with its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the government must be allowed to seize and review the contents of communications of electronic storage devices, including text and email messages sent or received by the subject device to determine whether other individuals had access to the device. If the government were constrained to review only a small portion of communications on the device, that small subsection might give a misleading impression that only a single user had access to the devices.

34.     Based upon my training and experience, my conversations with other law enforcement personnel assisting in this case, and my investigation in this case, I am aware that criminals discussing their criminal activity via electronic communication devices (computer email and cell phone text messaging) may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or code words (which require entire strings or series of text message conversations to determine their true meaning) when discussing their crimes. They can also discuss aspects of the crime without specifically mentioning the crime involved. It is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of a text message or the manipulation and combination of keys on the computer keyboard to convey an idea, such

Affidavit in Support of Search Warrant

as the use of a colon and parenthesis :) to convey a smile or agreement) to discuss matters.  "Keyword searches" or other automated methods of review of the text messages sent to and from the subject device would not account for any of these possibilities, so actual review of the text and email messages by law enforcement personnel with information regarding the identified criminal activity is necessary to find all relevant evidence.

35.     Based upon my training and experience, my conversations with other law enforcement personnel assisting in this case, and my investigation in this case, I have learned the following additional information:

a.     Individuals who steal, misdirect, take, unlawfully possess, or by fraud or deception obtain, U.S. Mail often maintain the U.S. Mail, and its contents to include financial records, for long periods of time to exceed months.  Such individuals will also scan onto computers, cell phones, and computer storage devices stolen mail or fraudulently obtained mail (and its contents) and maintain on computers, cell phones, and storage devices co-conspirators names, victim's names, addresses (of victims, associates, accomplices), and stolen means of identification, thereby reducing such items' exposure to law enforcement and the community. Individuals will then frequently dispose of the mail to avoid detection or association with the stolen mail.

b.     Individuals who steal, misdirect, take, unlawfully possess, or by fraud or deception obtain, identity information (including names, date of birth, account numbers, SSNs, and other financial information) will often maintain this information for long periods of time to exceed months.  Such individuals will also scan such onto computers, cell phones, and computer storage devices and maintain such on computers, cell phones, and storage devices of co-conspirators, thereby reducing such items' exposure to law enforcement and the community.

36.     Also, individuals involved in stealing or fraudulently obtaining U.S. Mail and possessing

11

financial information of others for fraud or deception, use laptop computers to remain in contact (communicate) with others involved in the same type of criminal activity. These individuals often retain evidence of such activity on their computer(s) or other forms of electronic storage media (including cell phones) for long periods of time. Individuals who fraudulently use the U.S. Mail and or financial information of others also use computers to access the internet to assess value and or validity of items obtained fraudulently from the U.S. Mail and or financial information, to barter and sell such stolen property/information, to communicate with others to sell and trade the stolen property/information, and to solicit information regarding the stolen property/information.

37.     I am aware that even if a perpetrator deletes evidence from electronic storage devices of criminal activity (such as identity theft, and fraudulent use of financial information in U.S. Mail), the evidence often can be recovered from computers or other forms of electronic storage media.

38.     I am aware that searching and seizure of electronic storage devices requires a qualified computer forensic specialist and must be conducted in a laboratory or other controlled environment. This is true based on the following:

a.     The volume of evidence: Computer storage devices (like hard disks, diskettes, tapes, laser disks, Jaz, Zip and other such storage devices/drives) can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive (misleading) file names. This requires searching authorities to examine all the stored data to determine which particular files is evidence or instrumentalities of a crime. This sorting process can take weeks or months, depending on the volume of data stored

b.     Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize

12

in some systems and applications, so it is difficult to know before a search expert is qualified to analyze the system and its data. Also, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap") a controlled environment is essential to its complete and accurate analysis.

c.      Data analysis may use several different techniques to search electronic data for evidence or instrumentality's of a crime. These include, but are not limited to the following: examining file directories and subdirectories for the lists of files they contain, "opening" or reading the first few "pages" of a selected files to determine their contents, scanning for deleted or hidden data, searching for key words or phrases ("string searches").

39.      I am aware that searching and seizure of electronic storage devices requires a qualified computer forensic specialist and must be conducted in a laboratory or other controlled environment. Therefore, your affiant requests authority to make a return on any seized electronic storage devices 120 days after the items are seized. If additional time is needed, the government may seek an extension of this time period from the Court within the original 120 day period from the date of execution of the warrant.

40.      Based on my training and experience, and the training and experience of law enforcement personnel with whom I have discussed this matter, and based on common sense, I am aware that persons engaged in access device and bank fraud, cause mail to misdirected to addresses that they utilize. Such persons also use associate addresses online to receive merchandise, financial documents, access devices and other items.

41.      Based on my training and experience, and the training and experience of law enforcement

13

personnel with whom I have discussed this matter, and based on common sense, I am aware that persons

engaged in access device and bank fraud sort and categorize the stolen items they obtained, including

stolen U.S. Mail, and then dispose of the unwanted items by tossing or disregarding them in locations

such as their trash. Such perpetrators commonly sort and create profiles with the contents of stolen U.S.

Mail. Also, perpetrators keep contents of stolen U.S. Mail, including financial and identification

information of victims in their residences and vehicles.

42.    For the reasons stated above, there is probable cause to believe that evidence, fruits,

contraband, and instrumentalities, as more fully described in Attachment B to the Search Warrant and

Application for Search Warrant, hereby fully incorporated herein, of violations Title 18, United States

Code, Section 2115, Burglary of a Post Office, and Section 1708, Possession of Stolen Mail may be

found at the Target Locations, more particularly described in Attachments A-1 through A-4. Based on

the foregoing, I respectfully request that the court issue the search warrant to allow for the search and

seizure of the items more fully described in Attachment B.

## V.    REQUEST FOR SEALING

43.    It is respectfully requested that this Court issue an order sealing, until further order of the

Court, all papers submitted in support of this request for a search warrant, to include the search warrant

itself. The affiant states that a criminal investigation regarding the above-named individuals is ongoing,

documents, reports and interviews are being obtained and contemplated, and further investigative

activity is likely to take several months.

44.    Based upon my training and experience, I have learned that criminals actively search for

criminal affidavits and search warrants via the internet and also disseminate them to other criminals as

they deem appropriate (i.e., post them publicly online). Premature disclosure of the contents of this

affidavit would seriously impede this investigation by disclosing details of the government's

investigation and evidence gathered in connection therewith. There is reason to believe that disclosure

14

Affidavit in Support of Search Warrant

1  of the contents of this affidavit or the existence of the search warrant will result in the destruction or

2  tampering of evidence or intimidation of potential witnesses, flight from prosecution, changes in

3  patterns of behavior, notification of confederates, or otherwise seriously jeopardize the ongoing

4  investigation.

5

6  I swear under the penalty of perjury that the foregoing is true and correct to the best of my

7  knowledge, information and belief.

8

9

10

11  La'Keisha Alexander-Abram
   U.S. Postal Inspector
12  United States Postal Inspection Service

13

14  Approved as to form:

15

16  SHERRY D. HARTEL HAUS
   ASSISTANT UNITED STATES ATTORNEY

17

18  Subscribed and sworn to before me
   This ___13th___ day of November 2013.
19

20

21

22  EDMUND F. BRENNAN
   UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

15

Affidavit in Support of Search Warrant

## ATTACHMENT A-1

The places to be searched include the house and property of 6677 Tyler Dr, Grizzly Flats, CA 95636, including two external sheds at the rear of the property which is further described as follows:

> 6677 Tyler Dr, Grizzly Flats, CA 95636 is located in El Dorado County, CA.  6677 Tyler Dr, Grizzly Flats, CA 95636 is a single family two-story home, with a white exterior and door and dark trim, located on a dead end street.  Attached to the front of the residence is a wooden deck with steps leading down to the driveway.  Security cameras are affixed to the exterior of the residence.  The house features a white metal security door.  In the rear of the house are two external sheds.

The house, as viewed from the street, is depicted below:



## **ATTACHMENT A-2**

The places to be searched include a white Jeep Cherokee (CA License Plate 6NXE637), registered through December 2012 to Sarah June Pierson, and observed by the affiant on November 7, 2013 at 6677 Tyler Drive, Grizzly Flats, CA 95636.

## ATTACHMENT A-3

The places to be searched include the person of MICHELLE RYAN CLARK, who currently resides at 6677 Tyler Drive, Grizzly Flats, CA 95636.

**ATTACHMENT A-4**

The places to be searched include two cellular phones seized on November 7, 2013 from 6677 Tyler Drive, Grizzly Flats, CA.  The phones are currently located at the office of the United States Postal Inspection Service, in a locked cabinet at 2000 Royal Oaks Drive, Sacramento, CA, specifically:

(a) one Samsung Metro PCS, white and black in color; and

(b) and a black ZTE phone from Metro PCS with the word "Jaydon" affixed in purple puffy paint.

## ATTACHMENT B

Agents are authorized to search and seize property that constitutes evidence, fruits and instrumentalities of violations of the following federal statutes: 18 U.S.C. § § 1708 and 2215.

Specifically, the evidence, fruits and instrumentalities of the above-referenced offenses, for which the agents may search and seize, are:

1.  All indicia of occupancy to include bank statements, credit card statements, credit cards, receipts, utility bills, correspondence, emails, internet transaction records and parcels of the following individuals:

    a.  Michelle Ryan Clark;
    b.  Robert Craggs;
    c.  Matthew or Matt Craggs; or
    d.  Duc Lee

2.  All United States Mail addressed to individuals other than the individuals listed above at Paragraph (1), above, including, but not limited to, mail bearing the name(s) William B., Steve S., Georgia O., John K., Melanie O., Janise T., James W., Cindy M., Marilyn P., Bobbi Joe E., or Susann H.

3.  All identification documents, notes and information bearing the name of persons other than individuals listed above at Paragraph (1), above, including, but not limited to, mail bearing the name(s) William B., Steve S., Georgia O., John K., Melanie O., Janise T., James W., Cindy M., Marilyn P., Bobbi Joe E., or Susann H.

4.  Business and personal checks addressed to or written by individuals other than individuals listed above at Paragraph (1), above, including but not limited to, items bearing the name Sarah E., Marilyn P., or Elizabeth T., William B., Steve S., Georgia O., John K., Melanie O., Janise T., James W., Cindy M., Marilyn P., Bobbi Joe E., or Susann H.

5.  USPS Arrow Locks, mail receptacle parts, property, keys, and locks.

6.  The materials to be seized shall include check stock, check making software, and check making materials or implements.

7.  All tools or implements used to burglarize Post Offices, open U.S. Mail receptacles or vehicles, including counterfeit keys, files, burglary tools and pry bars, and grinders used to make such keys.

8.  Additional cellular telephones belonging to MICHELLE RYAN CLARK (not including the phones previously seized during the search warrant).

9.      All cameras.

10.     Electronic data processing and storage devices, computers and computer systems
        including central processing units: internal and peripheral storage devices such as
        flash drives, fixed disks, external hard disks, floppy disk drives, diskettes, or other
        memory storage devices: peripheral input/output devices such as keyboards, printers,
        video display monitors, optical readers, and related communications devices such as
        modems: together with system documentations, operating lots and documentation
        software, instruction manuals, and passwords. If the foregoing items are not required
        for evidentiary purposes, they will be returned, absent further order of the Court,
        within 180 days of the date the warrant is signed.

11.     All documents, images (digital and physical pictures), records, materials, files, letters,
        memoranda and matter constituting or relating to U.S. Mail, U.S. Mail receptacles,
        trucks, vehicles, or employees.

12.     All items created or maintained in order to use, possess, catalogue, forge, obtain, and
        tabulate U.S. Mail, in whatever form and by whatever means such is stored or
        maintained, including by computer or digital media. The items to be searched for and
        seized include drafts, or modifications or forged mail matter in whatever form such
        information may have been generated or stored or maintained.   Such information
        shall include, and is not limited to, any financial correspondence, files and
        memoranda, contents of mailings, envelopes, sealed and unsealed mailings.

13.     The items to be searched for and seized shall include any hand made forms of such
        information, such as writings or drawings with any implement on any surface; any
        solutions or chemicals to forge mail items, or photocopies of mail matter:   any
        processing and storage devices, magnetic storage devices (such as computer CDs),
        computers and computer systems (including central processing units), flash drives,
        DVDs, floppy diskettes, hard disks, CD-ROMS or electronic notebooks, printouts or
        readouts from any magnetic storage device, system documentation, system access
        codes (for example, passwords and log-ins) operating logs and documentation,
        software and instruction manuals for these systems.

14.     Any U.S. Mail or common carrier packaging materials and envelopes.

15.     Electronic   books,   records,   receipts,   notes,   ledgers,   pictures,   video,   and
        communications (emails and text messaging) relating to the acquisition and/or sales
        of personal and/or financial identifying information, credit and credit cards, and
        merchandise.

16.     Electronic   books,   records,   receipts,   notes,   ledgers,   pictures,   video,   and
        communications (emails and text messaging) relating to the use of personal and/or
        financial identifying information, credit and credit cards, and merchandise (including
        vehicles, gloves, pry bars, other theft/burglary tools, computers, printers, label

makers, heat sealers, embossers, identification imprinters, paper stock, access devices, and/or stolen property proceeds.

17.   Electronic address and/or telephone books and other electronic materials reflecting names, addresses, and/or telephone numbers of any persons who be involved in theft of U.S. Mail or postal property, identity theft, mail fraud, access devi9ce fraud, wire fraud, bank fraud, and sales of such items. Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to the theft, forwarding, or possession of U.S. Mail, letters, trays, and/or bags and relating to the theft and sale of personal identifying and financial information of others.

18.   Any and all names, addresses, identification information, and telephone numbers of individuals other than those listed above at Paragraph (1), to include "electronic address books," or other storage media, to indicate indicia of possession, ownership, control or use of such materials, including, but not limited to, those related to victims William B., Steve S., Georgia O., John K., Melanie O., Janise T., James W., Cindy M., Marilyn P., Bobbi Joe E., or Susann H.

19.   Electronic books, records, receipts, bank statements and records, money drafts, letters or credit, money order and cashier checks receipts, passbooks, bank checks and other electronic items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money associated with stolen U.S. Mail located at 6677 Tyler Drive, Grizzly Flats, CA, and use of financial and identification information of individuals not listed in Paragraph (1) above by MICHELLE RYAN CLARK or other individuals listed in Paragraph (1), above.

20.   Image files of any and all associates and people referenced in electronic books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier checks receipts, passbooks, bank checks and other electronic items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money associated with stolen U.S. Mail located at 6677 Tyler Drive, Grizzly Flats, CA, and use of financial and identification information of individuals not listed in Paragraph (1) above by MICHELLE RYAN CLARK or other individuals listed in Paragraph (1), above.

21.   Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to use, acquisition, and/or sale of others' mail, personal identifying and financial information, including contents of such mail (mailed cash and checks, and postal customer property), together with indicia of the possession, control, ownership, or use of such records in relationship to online purchases, on-line chats, and e-mails relating to stolen U.S. Mail, robbery or U.S. Postal facilities and post office boxes, and/or Identity Theft.